UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-21933-CV-LENARD/TURNOFF

ANTHONY SAKAL,

      Plaintiff,

vs.

UNITED STATES OF AMERICA,

      Defendants.

_____/

### Report and Recommendation

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on February 26, 2010 **[DE 24]**, and an Order of Referral entered by the Honorable Joan A. Lenard on March 2, 2010. **[DE 25]**. A hearing on Defendant's Motion **[DE 24]** took place before the undersigned on May 24, 2010. **[DE 39]**.

Upon review of the Motion **[DE 24]**, the Response **[DE 27]**, the court file, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### I. Background

Plaintiff Anthony Sakal ("Sakal") filed this action against Defendant United States of America (the "Government") on July 13, 2009. **[DE 1]**. Sakal alleges, *inter alia*, that he sustained injuries at the Everglades National Park (the "Park") when he slipped and fell on January 27, 2007 at the White Water Bay Ramp located at the Flamingo Marina (the "Ramp"). Id. As a result of the

accident, Sakal filed this negligence action pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b). In his complaint, Sakal specifically alleges that the Government owed a duty to maintain the Ramp in a safe condition and to warn of dangerous conditions and that it breached its duty by its careless and negligent failure to adequately maintain the Ramp. Id. Sakal further asserts that the Ramp was unreasonably dangerous and slippery due to the presence of accumulated water, debris, seaweed, moss and algae that was located on the Ramp. Id.

In the instant Motion **[DE 24]**, the United State's argues that Sakal's claim is barred because the alleged omissions causing the injury relate to the Park's employees' discretionary decisions, and thus falls under the discretionary function exception contained in 28 U.S.C. § 2680(a). **[DE 24]**.[1]

## II. Discussion

### A. Legal Standard

Under the FTCA, the government waives its sovereign immunity with respect to certain torts committed by its employees for certain injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law." See 28 U.S.C. § 1346(b). However, this broad waiver of sovereign immunity under the FTCA is limited by several explicit and narrow exceptions.

The exception at issue in this case is the "discretionary function," 28 U.S.C. § 2680(a), which provides that the FTCA shall not apply to:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due

---

[1]Whether the Park's employees were actually negligent in making any decisions is irrelevant to the discretionary function inquiry. See, e.g., Autrey v. United States, 992 F.2d 1523, 1528 (1993).

2

care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viaco Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). When the discretionary function exception applies, the Government retains its sovereign immunity and the district court lacks subject matter jurisdiction over the claim. See, e.g., Tippett v. United States, 108 F.3d 1194, 1196 (1997).

In most cases where the government invokes the discretionary function exception, the issue turns on the exception's scope. See, e.g., Zumwalt v. United States, 928 F.2d 951, 953 (10th Cir. 1991). The Supreme Court clarified the scope of the exception in Berkovitz v. United States, 468 U.S. 531, 536 (1988), and established a two-part test for determining whether the discretionary function exception protects a government employee's action or omission. See also Autery v. United States, 992 F.2d 1523, 1526 (11th Cir. 1993). The Eleventh Circuit has adopted this approach to determine whether the exception applies. See Cranford v. United States, 466 F.3d 955(11th Cir. 2006); see also Autery.

Under this test, the court must first determine whether the government's conduct violated a mandatory statute, regulation, or policy that did not permit judgment or choice. Id. "[I]f the employee's conduct cannot properly be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect" because the employee has no

3

rightful option but to adhere to the directive. <u>Berkovitz</u>, 486 U.S. at 536.

Second, if the conduct contains an element of judgment or choice, the court must then determine whether the challenged actions involve public policy decision-making, the sort that the exception was designed to shield. <u>Id.</u> <u>See also</u> <u>Phillips v. United States</u>, 956 F.2d 1071, 1075 (11th Cir. 1992). "[G]overnment decisions based on policy factors are immunized because 'Congress wished to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy'" in tort actions. <u>Varig Airlines</u>, 467 U.S. at 814. Accordingly, the exception only protects government decisions grounded in public policy considerations. <u>See, e.g.</u>, <u>Berkovitz</u>, 486 U.S. at 537.

Because virtually every decision involves some element of judgment or discretion, an interpretation focusing on the "plain import of the statutory language would swallow the general waiver of sovereign immunity in the FTCA." <u>Gray v. Bell</u>, 712 F.2d 490, 508 (D.C. Cir. 1983). Following the language of the statute literally, nearly every government action or decision would be exempt from suit. "Unless government officials. . . make their choices by flipping coins, their acts involve discretion in making decisions." <u>See</u> <u>Payton v. United States</u>, 679 F.2d 475, 479 (5th Cir. Unit B 1982) (quoting <u>Smith v. United States</u>, 375 F.2d 243, 246 (5th Cir. 1967).

The <u>Gray</u> Court thoroughly analyzed the language and legislative history of the discretionary function exception and came to two general conclusions. <u>Gray</u>, 712 F.2d at 509. First, Congress intended to preserve sovereign immunity for "some undefined category of discretionary governmental acts but to abrogate that protection for ordinary, day-to-day acts of governmental negligence." <u>Id.</u> Second, Congress expected courts to refer to "preexisting notions of sovereign immunity" to determine the boundaries of the exception. <u>Id.</u>

4

**B. The Challenged Decision**

For the discretionary function exception to apply, this Court must find that the Park's failure to clean and/or maintain the Ramp did not violate any federal statute, regulation, or policy mandating such maintenance. See Autrey, 992 F.2d at 1528. If the conduct did not violate a policy, then the analysis turns to the second prong of the test, and the court must analyze whether the choices made by the Park's employees in maintaining or cleaning the Ramp were grounded in social, economic, and public policy, and of the sort that Congress intended to shield from liability. Id. Here, the Government argues that the discretionary exception applies because the Park's employees' decisions related to the maintenance of the Ramp are discretionary and the sort of policy decisions Congress intended to protect with sovereign immunity. **[DE 24]**. The undersigned disagrees.

**1. Whether the discretionary function exception to the FTCA bars the suit with regard to the Park's failure to clean and/or maintain the Ramp**

The Government first contends that the decision to not clean and/or maintain the Ramp is discretionary because it involves an element of choice, and thus falls under the exception to liability under the FTCA. Id. The Government specifically argues that because there is no statute, regulation, or policy mandating a procedure for cleaning the Ramp or a time frame for implementing any recommended action, the decision to not clean the Ramp is discretionary in nature and, therefore, immune to judicial scrutiny under the FTCA. Id. The relevant inquiry, however, is whether some policy or directive removed the Park's employees' discretion by imposing an affirmative responsibility to maintain the Ramp.

In this case, it is undisputed that there were no precise and/or explicitly mandated procedures for maintaining the Ramp. None of the Park's policies and regulations in place at the time of the

accident dictated a schedule for cleaning and/or maintaining the Ramp. However, park employees were mandated to generally inspect and maintain the premises, as prescribed in the Park's Risk Management Program, Strategic Planning, unwritten and written policies, and past performance. **[DE 24]**.

In this connection, the Park's "Everglades and Dry Tortugas National Parks' Documented Risk Management Program" (the "Risk Management Program"), implemented in 2005 and remaining in effect, enumerates several policies and directives relevant to this case. **[Id. at Ex. B]**. For example, all employees must "assist in maintaining a safety culture of continuous improvement" and "identifying, reporting unsafe . . . conditions, and when possible mitigating the hazard(s)." Id. Section 4 of the document provides that "[m]anagers, supervisors and employees all have a responsibility to identify and eliminate unsafe conditions and prevent unsafe acts." Id. Section 4 further states that "it is the responsibility of all [Park] personnel to be vigilant in observing . . . facilities for issues or deficiencies that could have an adverse impact on the safety . . . of the public." Id. The Risk Management Program continues to note that obvious hazardous conditions requiring correction must be abated *immediately*. Id. Finally, Section 14 states in pertinent part:

> All [Park] employees are responsible for reviewing the public environment for situations or conditions potentially hazardous to visitors. Park employees are reminded to think in terms of the average visitor's knowledge of the environment.
> * * *
> It is the responsibility of each employee and supervisor to insure that visitors are not unnecessarily exposed to hazards. . .Rangers on desk duty are responsible for informing visitors of "hidden" hazards known to the park that are associated with the natural and historic environment.

Id. at § 14.

In addition to the Park's Risk Management Program, its Strategic Plan for years 2001-2005

6

states that all efforts should be made to ensure the safety of the Park's visitors by "identifying, investigating, and correcting or mitigating sources of injury." **[DE 24, Ex. B]**. Further, the Park's unwritten policy and prior performance of employees requires daily visual inspection of the Ramp, followed by a walk across it to determine whether it felt slippery and needed cleaning. **[DE 24]**. The inspection plan in effect at the time of the accident did not dictate a schedule for cleaning the Ramp. Employees were free to pressure wash the Ramp if [they] felt there was a need to do so. See Declaration of Michael A. Jester, **[DE 24, Ex. B]**.

The Government argues that because the written and unwritten policies did not dictate a time frame or method for cleaning the Ramp, it cannot be held liable on employees' failure to go beyond what the operational plan requires. **[DE 24]**, see Autrey, 992 F.2d at 1529. The Government cites the Eleventh Circuit's decision in Autrey in support of its argument that a general guideline without specific procedures and time frames is insufficient to deprive the Government of the protection of the exception. However, the Autrey case is distinguishable from the matter at hand.

The unwritten policy in Autrey merely required park officials to visually inspect and report hazardous trees. Id. at 1524. The decision to identify, report, and remove such trees left employees without any guidance as to how to determine which trees were hazardous, where they may be located, what kinds of trees, when to inspect, etc. Because the policy lacked "fixed, readily ascertainable" standards, the Autry court held that the discretionary function exception barred suit because employees needed to exercise individual judgment. Id. at 1529.

Here, on the other hand, the Park's policies had far more specific directives, *supra*. Although the policies failed to express particular time frames for washing the Ramp, this Court finds that the requirement to inspect the Ramp daily and wash "when needed" is sufficient to meet the "fixed" and

"readily ascertainable" standard.

Further, in light of the Park's written and unwritten standard, noted *supra*, this Court finds that the procedure is mandated and not discretionary. Once the government mandated maintenance of the Park's structures for safety reasons, employees have no discretion to ignore these requirements. See Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955) (holding that the failure to maintain a light house subjected the Government to suit under the FTCA even though the initial decision to undertake and maintain the light house was a discretionary policy judgment). Consistent with the above, because the Park's policy did not leave room for employees to use discretion, the Government fails to meet the first test of the exception.

### 2. Whether the Park's failure to clean and/or maintain the Ramp is the sort of decision Congress intended to shield under the discretionary function exception

If an employee's conduct is found to be discretionary, the discretionary function exception bars suit if the employee's judgment "is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536. Having found that the Park's actions in this case were mandated and not discretionary, it is unnecessary for the Court to fully analyze whether those actions meet the second prong of the test. However, for purposes of a complete record, the undersigned shall briefly address the second prong.

The second part of the test requires the court to determine whether the government's actions are of a quality that Congress intended to shield from exposure to tort liability. Autrey, 992 F.2d at 1525. This analysis is based on whether the discretionary activity would result in judicial second guessing of political, economic and social judgments of legislative or administrative decisions. Id. The judgment must be directly related to effectuating agency goals, and purely administrative,

8

"garden variety" decisions are consistently classified as not being related to underlying social, political, or economic policies. Because expanding the discretionary exception to include garden variety decisions would frustrate Congress' purpose in enacting the FTCA, "courts must exercise restraint in insulating the government from nearly all tort liability." Sexton v. United States, 132 F.Supp.2d 967, 972 (M.D. Fla. 2000). Therefore, the court must determine whether the Park's employees' decisions regarding whether to clean the Ramp is an exercise in judgment grounded in regulatory policy or whether it is of a "garden variety."

In O'Toole v. United States, 295 F.3d 1029, 1035 (9th Cir.2002), the Ninth Circuit analyzed the spectrum of case law and noted that "[a]t one extreme of the policy prong of the analysis, where the discretionary function exception provides no defense to liability, are those agency decisions totally divorced from the sphere of policy analysis." See, e.g., United States v. Gaubert, 449 U.S. 315, 325 n. 7 (1991) (noting that when a governmental official drives negligently, causing an accident, his decision to drive negligently "can hardly be said to be grounded in regulatory policy").

At the other end of the spectrum are situations where the "government employee's exercise of judgment is directly related to effectuating agency policy goals." O'Toole, 295 F.3d at 1035. See, e.g., Varig Airlines, 467 U.S. at 814-20 (enforcement and implementation of airline safety standards by the Federal Aeronautics Agency); Gaubert, 499 U.S. at 332-34 (regulation and oversight of S&L lots by the Federal Home Loan Bank Board); and Berkovitz, 486 U.S. at 545-48 (release of vaccine lots by the Bureau of Biologics of the Food and Drug Administration). The government actions in these cases are fully grounded in regulatory policy and are the "kinds of decisions Congress empowered agencies to make and which the discretionary function exception shields from liability." Id.

9

By contrast, the discretionary exception generally does not apply to "garden variety" torts, particularly in maintenance actions. See, e.g., Gotha v. United States, 115 F.3d 176, 181 (3rd Cir. 1997) (explaining that the Navy's decision to not place a handrail on a steep footpath was "a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get"); Cope v. Scott, 45 F.3d 445, 451 (D.C. Cir. 1995) (deciding that the government's failure to post warning signs was not a decision "fraught with public policy considerations" and therefore fell outside the exception); Cestonaro v. United States, 211 F.3d 749, 755 (3rd Cir. 2000) (classifying the National Park Service's discretion regarding the maintenance of the lighting in a parking lot as a garden variety decision falling outside the discretionary function exception); Duke v. Dpt. of Agriculture Forest Service, 131 F.3d 1407, 1412 (failing to find any policy reasoning behind a government agency's "garden variety" decision to not warn of known dangerous conditions at a camping site); and Gonzalez v. United States, 690 F.Supp. 251, 254 (E.D.N.Y 1988) (holding that the government's decision to employ a type of queue control involves no "uniquely governmental considerations" and "is not a policy decision of the type Congress envisioned" in the exception).

Here, the Government argues that the decision of whether to clean the Ramp is not of a "garden variety" and is protected because it involves weighing policy factors such as visitor traffic, accessibility to the Ramp, other maintenance activities, and available financial resources. Again, the Government cites Autrey in support of its argument. There, the discretionary function exception applied to a "general policy" mandating that employees weigh competing policy concerns to determine whether to remove a potentially hazardous tree. Id. at 1529. In this case, however, no Park policy actually requires employees to balance any policy factors when inspecting and cleaning the

10

Ramp. As previously noted, park employees are simply required to inspect the Ramp daily, determine whether the footing feels slippery, and wash when needed.

In this regard, the Government argues that in carrying out the Park's maintenance policies, employees had to weigh various policy considerations; thus, the decision to clean the Ramp is one Congress intended to shield from liability. According to the Government, one of the Parks' purposes is to provide a public park for the benefit and enjoyment of the public, including the ability to use the Ramp to go boating and to enable visitors to experience the natural environment. Because cleaning the Ramp requires it to be temporarily closed, the argument is that employees must use their judgment to determine whether closing the Ramp conflicts with the Park's purposes; moreover, since this judgment involves policy considerations, any resulting action is barred. **[DE 24]**. In doing so, the Government argues the employees must consider whether there are other maintenance activities that should be carried out first and any financial limitations. These arguments do not logically follow.

First of all, there is no evidence that cleaning the Ramp requires anything more than a brief and temporary closing of the Ramp. Second, preserving the natural habitat is not at issue in this case because the Ramp is a concrete, man-made structure. Third, under this analysis, the government would almost never be liable whenever a visitor slipped and fell on the Ramp, even in the face of gross negligence. Further, financial limitations do not permit the abdication of maintenance and are not a valid basis to claim the discretion exception. See O'Toole, 295 F.3d at 1037.

Sakal properly notes that shielding the government from liability in this case would expand the scope of the exception too broadly, would frustrate Congress' purpose in enacting the FTCA, and would swallow the FTCA whole. The undersigned agrees. Because the employees' decisions regarding the cleaning and/or maintenance of the Ramp lacked actual political, economic, or social

11

considerations and are not grounded in regulatory policy, the undersigned finds that Government has failed to meet the second part of the test and the discretionary function exception does not apply.

### III. Conclusion

Consistent with the above and foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction [**DE 24**] be **DENIED**.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. <u>RTC v. Hallmark Builders, Inc.</u>, 996 F. 2d 1144, 1149 (11th Cir. 1993); <u>LoConte v. Dugger</u>, 847 F. 2d 745 (11th Cir. 1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of June 2010.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Honorable Joan A. Lenard
Counsel of Record

12