UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21933-CIV-LENARD/TURNOFF

**ANTHONY SAKAL,**

    Plaintiff,

v.

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (D.E. 41) AND DENYING DEFENDANT'S MOTION TO DISMISS (D.E. 24)

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge William C. Turnoff ("Report," D.E. 41), issued on June 14, 2010. The Report recommends denial of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion," D.E. 24), filed on February 26, 2010.[1] On June 28, 2010, Defendant filed objections to the Report ("Objections," D.E. 46), to which Plaintiff filed a response ("Response," D.E. 49) on July 12, 2010. Having considered the Motion, Report, Objections, Response, related pleadings, and the record, the Court finds as follows.

**I.**    **Background**

On January 27, 2007, Plaintiff Anthony Sakal ("Sakal") slipped and fell while at the Everglades National Park ("Park"). He alleges that he slipped and fell due to an

---

[1] Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint based on a lack of subject-matter jurisdiction.

unreasonably dangerous accumulation of water, debris, seaweed, moss, and algae at the White Water Bay boat ramp ("Ramp") located at the Flamingo Marina. As a result, he claims to have suffered serious injuries. Accordingly, on July 13, 2009, Sakal filed the instant action against Defendant United States of America ("Government") asserting one count of negligence in light of the Government's failure to maintain the subject premises in a safe condition and warn of any dangerous condition. (See Complaint, D.E. 1.) Sakal alleges the Court possesses subject matter jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1).

The Government subsequently moved to dismiss the Complaint for lack of subject matter jurisdiction on the basis that Sakal's claim is barred by the "discretionary function" exception to the FTCA's broad waiver of sovereign immunity. See 28 U.S.C. § 2680(a). The Government contends the Park employees' decisions as to how to maintain the Ramp are discretionary and the sort of policy decisions Congress intended to shield with sovereign immunity. Sakal disagrees and argued the discretionary function exception does not apply to the conduct alleged in this case. On May 24, 2010, the Magistrate Judge held a hearing on the matter and on June 14, 2010, issued his Report agreeing with Sakal and recommending the Government's Motion be denied.

**II.     Magistrate Judge's Report**

The Report concludes the discretionary function exception does not apply to the conduct alleged in this case based upon the two-prong test set forth in Berkovitz v. United

States, 468 U.S. 531, 536 (1988) and United States v. Gaubert, 499 U.S. 315 (1991). First, the Magistrate Judge examined whether the challenged conduct violated a mandatory regulation or policy. (Report at 5-8.) Although finding there were no explicitly mandated procedures for maintaining the Ramp, the Report finds Park employees were required to generally inspect and maintain the premises based upon the Park's Risk Management Program, Strategic Planning program, unwritten policies, and past performance. (Id. at 6.) As such, the Report concludes the Park possessed fixed and readily ascertainable standards that did not provide employees with discretion as to how to maintain the Park's Ramp. Second, the Magistrate Judge looked at whether the Government's decisions were the kind the discretionary function exception was meant to shield, assuming such decisions were indeed discretionary. (Id. at 8-12.) The Report concludes that since the employees' decisions concerning the cleaning or maintenance of the Ramp lacked political, economic, or social considerations and were not grounded in regulatory policy, such decisions were not the kind of actions Congress meant to protect. In sum, the Report concludes that shielding the Government from liability in garden-variety cases such as this would expand the scope of the discretionary function exception to the point it swallowed the FTCA whole. (Id. at 11.)

In its Objections, the Government argues the Magistrate Judge erred as to both prongs of the discretionary function exception analysis. First, the Government argues that the Park's guidelines are broadly written and only require employees to generally identify, report, eliminate, correct, and mitigate dangerous conditions. (Objections at 4-10.) The

3

Government contends this case is much like the situation in Autery, where the Eleventh Circuit held a national park's guidelines regarding tree removal were insufficient to deprive the Government of the discretionary function exception in a case where the plaintiff was injured by a falling tree. The Government further asserts that the Magistrate Judge erred in its reliance upon Indian Towing Co. v. United States, 350 U.S. 61, 69 (1950). Second, the Government argues the Magistrate Judge erred because the Park's decisions related to the Ramp are susceptible to the kind of policy analysis shielded by Congress and are presumed to be grounded in policy. (Objections at 10-17.) The Government argues that the Magistrate Judge improperly considered whether Park employees actually weighed social, economic, and political policy considerations in deciding whether or how to maintain the Ramp. (Id. at 11.) Instead, the Government believes the Magistrate Judge and this Court are required to examine whether the decisions were susceptible to such analysis. Finally, the Government argues that Park employees had to "determine and weigh the risk of harm from any slippery substance on the Ramp, the other maintenance functions necessary to be performed, the extent to which access to the Ramp should be limited pursuant to the Park's mission goals, and the limited financial [sic] human resources available." (Id. at 14.) Thus, the Government requests the Court overrule the Report and dismiss Sakal's Complaint for lack of subject matter jurisdiction.

### III. Standard of Review

Upon receipt of the Report and the Government's Objections, the Court must now

"make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see FED. R. CIV. P. 72(b)(3). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. In making its determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007).

**IV.     Discussion**

"The United States is immune from suit unless it consents to be sued." Cranford v. United States, 466 F.3d 955, 957-58 (11th Cir. 2006) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Through the FTCA, Congress has authorized suit against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (2006). However, excepted from this broad waiver of sovereign immunity is "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28

U.S.C. § 2680(a) (2006).  "The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Autery v. United States, 992 F.2d 1523, 1526 (11th Cir. 1993) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)).  The purpose of the exception is to "'prevent judicial 'second -guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Autery, 992 F.2d at 1526 (quoting Varig Airlines, 467 U.S. at 814); Powers v. United States, 996 F.2d 1121, 1125 (11th Cir. 1993).  The applicability of this "discretionary function" exception is at issue here.

The Supreme Court has set forth a two-part test for determining whether the government's conduct falls within the discretionary function exception.  See Gaubert, 499 U.S. at 322-23; Autery, 992 F.2d at 1526.

First, the court is to consider the nature of the government employee's conduct and determine whether it involves "an element of judgment or choice." Gaubert, 499 U.S. at 322; Cranford, 466 F.3d at 958; Downs v. United States Army Corps of Engineers, 333 Fed. Appx. 403, 407 (11th Cir. 2009).  "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'" Autery, 992 F.2d at 1526 (quoting Gaubert, 499 U.S. at 322).  Stated another

way, "if a government official in performing his statutory duties must act without reliance upon a <u>fixed or readily ascertainable standard</u>, the decision he makes is discretionary and within the discretionary function exception.'" <u>Powers</u>, 996 F.2d at 1124 (quoting <u>Alabama Elec. Cooperative, Inc. v. United States</u>, 769 F.2d 1523, 1529 (11th Cir. 1985)). Nevertheless, courts must be mindful that because nearly all decisions require some element of discretion, the exception does not swallow the rule. <u>See</u> <u>Gray v. Bell</u>, 712 F.2d 490, 508 (D.C. Cir. 1983). In essence, "[t]he relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." <u>Powers</u>, 996 F.2d at 1124-25.

The Court adopts the Magistrate Judge's findings that the Park's written and unwritten policies provided a fixed, readily ascertainable mandate to visually inspect and maintain the Ramp, and thus the government's conduct was not discretionary. At the very least, the Park's written and unwritten policies required employees to identify, report, and mitigate hazardous conditions. (<u>See e.g.</u>, D.E. 24-2 at 48-212 and D.E. 24-3 at 1-210, Everglades and Dry Tortugas National Parks Documented Risk Management Program; D.E. 24-2 at 5-46, Everglades National Park Strategic Plan.) Furthermore, it was the Park's unwritten policy and the practice of its employees to visually inspect the Ramp on a daily basis and walk across it to determine whether it felt slippery and needed cleaning. (<u>See e.g.</u>, D.E. 24-4 at 22-23, 40, 42.) Thus, the Park's requirement that employees be on the look out for potentially dangerous conditions and specifically were to visually inspect the Ramp on a

7

daily basis, walk across the Ramp to see if it was slippery, and wash the Ramp "as needed," provided a readily ascertainable standard for employees to follow. This case is unlike the situation in Autery, where the National Park Service did not provide any particular methods of tree inspection and the court was required to determine whether the government had discretion as to its maintenance of trees in a national forest. 992 F.2d at 1528-29. In this case, employees were directed to specifically inspect the Ramp, as one of two ramps at the Park, physically walk across it to see whether their footing felt "un-firm," and wash the Ramp if it felt slippery. Thus, despite the fact that almost every government employee's action is going to involve some element of judgment or choice, the Court finds the government's conduct was not discretionary.

Second, even assuming the Park's conduct involves an element of judgment, the Court must now determine whether "the challenged actions are the kind of conduct that the discretionary function exception was designed to shield." Id. at 1526-27 (internal citations omitted). The Court must determine "whether the challenged actions taken by a government agent 'are susceptible to policy analysis.'" Powers, 996 F.2d at 1125 (quoting Autery, 992 F.2d at 1531). The inquiry "does not focus either on the subjective intent of the government agent, or on whether the agent actually weighed policy considerations, but 'on the nature of the actions taken and on whether they are susceptible to policy analysis.'" Cranford, 466 F.3d at 958. Exempt decisions are those fraught with public policy considerations and involve situations where judicial review "would encroach upon the type of balancing done by an

8

agency." O'Toole v. United States, 295 F.3d 1029, 1033-34 (9th Cir. 2002).

The Court adopts the Magistrate Judge's findings that the Park's conduct, even if discretionary, was not the type of conduct that the discretionary function exception was designed to shield. Application of the discretionary function exception to a garden-variety tort case such as this would seriously threaten to swallow the FTCA whole. The Government argues the Park's decisions with regard to the maintenance of the Ramp are susceptible to policy analysis and manufactures a number of policy considerations it says such a decision requires. None of these considerations are persuasive. There is no indication that the inspection or cleaning of the Ramp required, if anything, more than a brief closing of the Ramp. The Government cannot argue that the determination and weighing of the risk of any slippery substance on the Ramp itself was such a policy consideration. Perhaps the Government's most genuine argument is that the decision is susceptible to considerations of what other maintenance functions needed to be performed and the limited human resources available. Nevertheless, this alone is not an adequate basis for tort immunity. See id., 295 F.3d at 1037. The government's conduct in this case is not susceptible to political, economic, or social considerations and is not grounded in regulatory policy. Therefore, even assuming the government's conduct involved an element of judgment or choice, such conduct is not the type that should be shielded from liability under the discretionary function exception. Accordingly, consistent with this Order, it is hereby **ORDERED AND ADJUDGED** that the Magistrate Judge's June 14, 2010, Report and Recommendation (D.E. 41) is **ADOPTED**,

9

Defendant's Objections (D.E. 46) are **DENIED**, and Defendant's Motion to Dismiss (D.E. 24) is **DENIED**.

  **DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of September, 2010.

              /s/ Joan A. Lenard
              **JOAN A. LENARD**
              **UNITED STATES DISTRICT JUDGE**